IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DEWAYNE GHOSTON                                                                              PLAINTIFF

VS.                                                        CIVIL ACTION NO. 3:05CV766HTW-LRA

NISSAN NORTH AMERICA, INC.                                                              DEFENDANT

### ORDER GRANTING SUMMARY JUDGMENT

Before this court is the motion of defendant for summary judgment, said motion filed pursuant to Rules 56(b) and (c),[1] Federal Rules of Civil Procedure. The plaintiff here, Dewayne Ghoston ("Ghoston"), contends the defendant, Nissan North America ("Nissan"), violated the American with Disabilities Act ("ADA"), Title 42 U.S.C. §§12101, *et seq.,* and committed the common law tort of intentional infliction of emotional distress. For the reasons explained below, the court, viewing the summary judgment record in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and holds Nissan is entitled to judgment as a matter of law under Fed. R. Civ. Proc. 56 because: (1) Ghoston cannot produce evidence sufficient to support a finding that he had a "disability" under the ADA; (2) G hoston cannot produce evidence to support a finding that he was a "qualified individual" under the ADA; (3) Ghoston cannot produce evidence sufficient to support a finding Nissan was obligated to accommodate Ghoston's indefinite restriction against returning to work under the same

---

[1] Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

supervisor; and (4) Ghoston cannot produce evidence sufficient to support a finding of intentional infliction of emotional distress.  These matters are discussed in detail below.

## Undisputed Facts

According to his complaint, the plaintiff Dewayne Ghoston began working with the defendant Nissan North America, Inc., on January 12, 2004.  Plaintiff worked on an automobile brake assembly line.  The plaintiff began experiencing pain in his neck and shoulders which affected his ability to keep pace with his co-workers.  The plaintiff says he requested a visit to the medical facility located on the work premises, but his request was denied.  Later, says plaintiff, he was counseled by his supervisor regarding the pace and quality of his work.  Plaintiff says he complained to his supervisor that his request for medical assistance had ben denied and that he believed is slower pace was due to the pain he was suffering.

In August of 2004, the plaintiff says he visited the onsite clinic to have is pain evaluated.  Plaintiff says he was diagnosed with muscle strain and given medication to relief his pain.  Plaintiff says that he also was placed on a work restriction which pertained to his participation in overhead work.

Plaintiff says he returned for a subsequent visit to the onsite clinic suffering even more pain.  The clinic, says plaintiff, increased his work restrictions, particularly with regard to work motions involving twisting and flexing of his neck.  Consequently, says plaintiff, he was transferred to another job position.

2004894.1/10826.23706

Plaintiff says he also was being counseled through the Nissan Employee Assistance Program regarding mental health issues and that this assistance, which is supposed to be confidential, was communicated by someone to his supervisor.

The plaintiff says he attempted to return to his regular duties, but that he began to suffer headaches in addition to his other symptoms. Upon returning to the onsite clinic, plaintiff says the doctor referred him to a psychiatrist where the plaintiff underwent intensive psychiatric examinations and medical testing, and was diagnosed with a depressive disorder and anxiety. An MRI revealed no physical cause for the plaintiff's symptoms. Plaintiff says he was placed on medical leave of absence and subjected to further testing and evaluation which continued until November 30, 2004, when a psychiatrist diagnosed the plaintiff to be suffering from a major depressive disorder. According to the plaintiff, the psychiatrist opined that the plaintiff's condition had stabilized and that he could return to work if he could be placed under a different supervisor. However, says plaintiff, the Human Resources office never reassigned him to work, and, eventually, concluded that the plaintiff should not be permitted to return to work.

Based on the foregoing, which is not disputed by the defendant, the plaintiff believes he was denied his job wrongfully and that no accommodation was made by Nissan for his circumstances. On June 1, 2005, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission under the Americans with Disabilities Act, contending that he had a major depressive disorder and that Nissan refused to accommodate his medical request by allowing him to return to work under a different supervisor.

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catress,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for the motion and identifying those portions of the record in the case which the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. The movant, however, need not support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir. 1962).

### The Essential Elements of a Prima Facie Case Under the ADA

To establish a prima facie case of discrimination under the ADA, a plaintiff must plead and prove "(a) that he has a disability; (b) he is a qualified individual for the job in question; and (c) an adverse employment decision was made because of his disability." *Hamilton v. Southwestern Bell Telephone Co.,* 136 F.3d 1047, 1050 (5th Cir. 1998) (citing 42 U.S.C. §12112[a]).

So, as a threshold matter, a plaintiff must establish that he has a "disability" that is protected by the ADA. *Id.*; *Ray v. Glidden Co.,* 85 F.3d 227, 228 (5th Cir. 1996). A "disability" is defined by the ADA as (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such impairment; or (3) being regarded as having such an impairment. *Hamilton*, 136 F.3d at 1050; *Ray*, 85 F.3d at 228; 42 U.S.C. §12102(2).

The ADA does not define "major life activities" or "substantially limits," but the Equal Employment Opportunity Commission ("EEOC")[2] has defined these two terms: "Major life

---

[2]The EEOC was established by 42 U.S.C.A. §2000e-4, section 705 of the Civil Rights Act of 1964, and empowered to prevent, investigate and take action against unlawful employment practices as set forth in that Act. Terms of EEOC regulations, including "major life activities" and "substantially limits," are

- 5 -

activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996), *cert. denied*, 519 U.S. 1093, 117 S.Ct. 770, 136 L.Ed. 2d 715 (1997) (quoting 29 C.F.R. §1630.2[i]).

The term "substantially limits" means significantly restricts an ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *Id.*; 29 C.F.R. §1630.2(j)(3)(i). The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. *Id.*

A "disability" under the ADA is characterized by both severity and permanence of functional impairment. *See Waldrip v. Gen. Elec. Co.,* 325 F.3d 652, 656-57 (5th Cir. 2003) (holding that occasional flare-ups of plaintiff's chronic pancreatitis which required him to miss work did not qualify as "disability"); *Burch v. Coca-Cola Co.,* 119 F.3d 305, 316 (5th Cir. 1997) ("we have previously rejected attempts to transform temporary afflictions into qualifying disabilities."). So, for example, the fact that inhalation of fumes at work sometimes triggers muscle weakness causing temporary paralysis "does not qualify as a disability." *Dillon v. Roadway Express,* 120 Fed. Appx. 893, 897 (5th Cir. 2005) (unpublished opinion issued on appeal of case originating in Southern District of Mississippi).

To satisfy the "qualified individual" requirement of a prima facie case, an ADA plaintiff must plead and prove that he has the ability to perform the essential functions of the job with or without reasonable accommodation in spite of his "disability." The law does not require an

---

defined in 29 C.F.R. § 1630.2.

employer to transfer from a disabled employee any of the essential functions of his job. *Barber v. Nabors Drilling, U.S.A., Inc.,* 130 F.3d 702, 709 (5th Cir. 1997), *reh. denied,* 137 F.3d 1353 (1998).  An employee cannot perform the essential functions of a job with reasonable accommodation if the only successful accommodation would be for him not to perform those functions. *Id.*

### Ghoston Cannot Produce Evidence Sufficient To Support A Finding That He Was A "Qualified Individual With A Disability"

Ghoston alleges (Complaint, ¶2) Nissan "wrongfully discriminated against [him] based on his disability and/or perceived disability."  In his complaint, Ghoston alleges two general categories of impairments: one physical, the other mental.  His physical impairment (see Complaint, ¶¶8-20) allegedly included "pain in his neck and upper shoulders which affected his ability to keep up with the line on which he was working [in mid 2004]," and "severe headaches [that August]."  Complaint, ¶¶8, 15.  His "mental health issues" allegedly included "a depressive disorder and significant anxiety" for which he received "intensive psychiatric examinations and tests" in August and September of 2004.  Complaint, ¶¶14-17.

Ghoston alleges no facts to support his claim of "disability."  He says nothing to indicate that his alleged symptoms were so severe and long-lasting that they substantially limited a major life activity.  He alleges (Complaint, ¶14) he was "released to return to work with no restrictions on or about August 20, 2004."  Complaint, ¶14.  He alleges (Complaint, ¶15) that when he then returned "to his regular duties, his medical symptoms [were] aggravated and he [began] to suffer from severe headaches as well," but he does not allege these temporary symptoms substantially limited a major life activity.

Nor does Ghoston allege that he was able to perform essential job functions in spite of his symptoms. His complaint therefore also fails to allege he was a "qualified individual" under the ADA. Even a person who has a "disability" under the ADA must plead and prove that he was "qualified," meaning able to perform essential job functions. *See Barber,* 130 F.3d at 709. Ghoston alleges (Complaint, ¶¶14-24) his "mental health issues" led various healthcare professionals to put him on temporary medical leave of absence until November 30, 2004, when they told Nissan they "believed he could return to work if he were under a different supervisor." This residual restriction, however, establishes no ADA "disability" because even permanent inability to work under a specific supervisor does not imply any substantial limitation on major life activities. It is well-settled that the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working and therefore does not constitute a "disability" under the ADA. *Bridges,* 92 F.3d at 332; *see also Toyota Mfg., Kentucky, Inc. v. Williams,* 532 U.S. 184, 122 S.Ct. 681, 151 L. Ed. 2d 615 (2002) (employee must have impairment that prevents or severely restricts activities of central importance to most people's daily lives; inability to do repetitive work with hands or arms at or above shoulder level provides insufficient evidence or substantial limitation in major life activity); *Moreno v. Brownlee,* 2004 WL 34860, p. 4 (5th Cir. 2004) (unpublished opinion); *Price v. Marathon Cheese Corp.,* 119 F.3d 330, 336 (5th Cir. 1997).

Employers have no duty under the ADA to accommodate a restriction against working under a particular supervisor in any case. *See EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act,* Question 33 (EEOC Notice No. 915.002, Oct. 17, 2002), which specifically states that "[a]n employer does not have to provide an employee with a new supervisor as a reasonable accommodation." Case

law tracks the EEOC's guidance in this respect. *See also MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1276 (10th Cir. 2005)("[t]he major activity of working cannot be 'substantially impaired' if the plaintiff cannot work under a certain supervisor because of the stress and anxiety it causes"); *Bradford v. City of Chicago*, 121 Fed.Appx. 137, 140 (7th Cir. 2005)(unpublished opinion)("[t]he choice of a supervisor belongs to the employer, not the employee"); *Kennedy v. Dresser Rand Co.*, 193 F.3d 120, 123 (2nd Cir. 1999)("there is a presumption…that a request to change supervisors is unreasonable…"); *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 319 n. 10 (3rd Cir. 1999)("a disabled employee is not entitled to a supervisor ideally suited to his or her needs."); *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 581 (3rd Cir. 1998)(request to be transferred from individual causing employee stress is unreasonable as matter of law under ADA); *Siemon v. AT&T Corp.*, 117 F.3d 1173, 1176 (10th Cir. 1997) (employee's "mental impairment [which] merely prevent[ed] him from working under a few supervisors…far too narrow to constitute a 'class of jobs'" under ADA); *Weiler v. Household Finance Corp.*, 101 F.3d 519, 526 (7th Cir. 1996)("[i]n effect, Wyler asks us to allow her to establish the conditions of her employment, most notably who will supervise her [n]othing in the ADA allows this shift in responsibility").

Ghoston's allegation of "perceived disability" also fails as a matter of law. Under the ADA, to be "regarded as" disabled by an employer, a plaintiff must

> (1) have a physical or mental impairment that does not substantially limit major life activities, but be treated as such by an employer; (2) have a physical or mental impairment that substantially limits one or more major life activities, but only because of the attitude of others towards the impairment; or (3) have no impairment at all but be treated by an employer as having a substantially limiting impairment.

*McInnis v. Alamo Comm. College Dist.,* 207 F.3d 276, 281 (5th Cir. 2000).

A plaintiff alleging a "regarded as" disability must allege more than an employer's perception of impairment. He must allege employer perception of an impairment of sufficient severity and duration to qualify as a "disability," meaning a substantial limitation of a major life activity. *Id.*

Nothing in the summary judgment record would support a finding that Ghoston was "regarded as disabled." Ghoston merely alleges that Nissan, relying upon the advice of medical professionals, declined to accommodate an indefinite restriction against returning to work under the same supervisor. As a matter of law, Nissan had no duty to accommodate this restriction even if it were permanent and even if Ghoston were a "qualified individual with a disability."

According to Ghoston's own judicial admissions, Nissan was presented with only two medical scenarios, neither of which made him a "qualified individual with a disability" within the meaning of the ADA: (1) He could return to work at Nissan only if assigned to a different supervisor, and (2) he could not return to work at Nissan because to do so posed a direct threat of violence to himself or others.

To be "qualified," an employee must be able to perform essential job functions. To have a "disability," an employee must be substantially limited in a major life activity. A Nissan employee is not "qualified" if he cannot work under his assigned supervisor because working under an assigned supervisor is an essential job function. Because inability to work under an assigned supervisor does not substantially limit a major life activity, an employee with that narrow inability does not have a "disability." To be "qualified," an employee must be able to work without posing a danger to himself or others because working safely is an essential job function. An employee whose hostility to a single supervisor in a single workplace restricts him

from working there does not have a "disability" because inability to perform a specific job under a specific supervisor does not substantially limit a major activity.

Even if Nissan perceived Ghoston as posing the obviously unacceptable risk which he admits two medical doctors (Dickens and Oldham) told Nissan he would pose if returned to Nissan's workplace, that perception would not have entailed a "disability" within the meaning of the ADA because it would not have entailed an inability to work elsewhere. *See Bridges,* 92 F.3d at 332; *McInnis,* 207 F.3d at 281.

According to Ghoston's own judicial admissions, it was Drs. Oldham and Dickens who in their medical judgments perceived him to pose a direct, physical threat to himself and others if allowed to return to Nissan. Nissan did not and could not have made its own medical judgments. Ghoston does not contend otherwise; rather, he contends (Depo., pp. 57-58) Nissan relied upon Dr. Oldham's medical advice. That advice was not that he had a substantial limitation of a major life activity. It was that letting him come back to Nissan at that time would have posed a direct threat to himself and others. Neither the doctors nor Nissan in any way indicated that they perceived Ghoston to have been unable to work elsewhere.[3]

Ghoston in his deposition admitted Nissan accommodated every single restriction imposed upon him following each of his repeated visits to the Whole Health Clinic in the Canton facility in August of 2004. (Ghoston Depo., pp. 30-31, 34-39.) He admitted he was off work and unable to work, with or without accommodation, after he requested, and was approved for, a medical leave of absence commencing August 24, 2004. (Id., pp. 43-46.) He admitted that he remained off work and unable to work until December 6, 2004, and he admitted that, according

---

[3] In fact he did work elsewhere: He worked a construction job from January, until August of 2005, when he started working for Tyson Foods (Depo., pp. 4-5).

to Dr. Price, his psychiatrist in Brandon, as of that date he was left with a restriction against returning to work under the same supervisor. He also admitted that although he tried, he could not get Dr. Price to lift that restriction by the time he exhausted his leave time on April 6, 2006, when he was terminated. (Id., pp. 54, 75-77.)

The law as applied to the facts alleged in Ghoston's complaint confirms each of these three propositions, any one of which is fatal to his ADA claim: (1) Because ability to work under one's assigned supervisor is an essential job function, Ghoston's inability to work under his assigned supervisor means he was not a "qualified individual" under the ADA; (2) because inability to work under one's assigned supervisor is not a "substantial limitation on a major life activity," Ghoston was not an "individual with a disability" under the ADA; and (3) because "reasonable accommodation" under the ADA does not include reassignment to a different supervisor, Nissan's refusal to accommodate was entirely lawful under the ADA.

Employers in any event have no duty to accommodate even perceived impairments which, unlike Ghoston's, are so severe and long-lasting that they rise to the level of ADA "disabilities." The law in this Circuit is clear: "[A]n employer need not provide reasonable accommodation to an employee who does not suffer from a substantially limiting impairment merely because the employer thinks the employee has such an impairment." *Newberry v. East Texas State University,* 161 F.3d 276, 280 (5th Cir. 1998).

Ghoston confines his theory of liability to failure to accommodate *his doctor's* restriction against returning to work under the same supervisor in April of 2005.[4] In his deposition, he admitted he unsuccessfully tried to get that restriction lifted before he was administratively

---

[4] See Ghoston's EEOC charge, in which Ghoston states, "[M]y doctor recommended for me to return to work; however, she specified for me to work for a different supervisor." The charge appears in the summary judgment record as Exhibit 1 to Ghoston's deposition, which is Exhibit A to Nissan's motion for summary judgment.

terminated from Nissan on April 6, 2005, consistent with Nissan's policy, because he had exhausted leave time (Ghoston Depo., pp. 58-61, 98-100; see also Complaint, ¶ 28).

The summary judgment record demonstrates that none of the medical providers who evaluated Ghoston was a Nissan employee.[5]  Gail Thomas Avery, L.P.C., had a private practice.[6]  Dr. Reid, Ghoston's "family physician" during the relevant time, also had a private practice. (Ghoston Depo., p. 38).[7]  Dr. Martha D. Dickens was a physician practicing at the Canton, Mississippi, Clinic of Whole Health, a corporation distinct from Nissan.[8]  Dr. Karen Oldham, who evaluated Ghoston "at Dr. Dickens's request," was "also of Whole Health."  (See Ghoston Depo., p. 33, Exhibit 30; Complaint, ¶23.)  Dr. Gary Roberson was a psychiatrist employed at an independent psychiatric clinic, Psycamore, LLC, in Jackson, Mississippi.  (See Ghoston Depo., p. 47, Exhibit 32).  It was Dr. Roberson who took Ghoston off work in August of 2004, and admitted him for "intensive therapies and psychiatric evaluation," finding he was "not stable enough to resume work at the present time until further notice."  (Id.)

Ghoston's own EEOC charge, complaint and deposition attribute his termination to the fact that when he exhausted his leave time, he remained restricted by Dr. Price against returning to work under the same supervisor.  Ghoston himself did not attribute his termination to Dr.

---

[5] This is not a case of an employer relying upon its own medical consultant's opinion that employee cannot work without restrictions over a conflicting opinion from the employee's attending physician's that he can work without restrictions. All of the medical providers here agreed that Ghoston could not work without restrictions.  Nissan relied upon Ghoston's own attending psychiatrist's (Dr. Price) opinion in terminating him.  Moreover, even if Drs. Dickens and Oldham and Ms. Avery had not said what they said about Ghoston posing a direct threat, Ghoston still could not have returned to work based upon his attending psychiatrist's (Dr. Price's) restriction against return to work under the same supervisor.

[6] Ms. Avery's only Nissan connection was that Ghoston saw her courtesy of Nissan's Employee Assistance Program. (See Ghoston Depo., Exhibit 19.)  Ghoston himself disclosed to Dr. Dickens of Whole Health that he has seen Ms. Avery under the Employee Assistance Program.  (Ghoston Depo., p. 40).

[7] Ghoston testified that he told Dr. Dickens of Whole Health that Dr. Reid, his own "local medical doctor," had put him on Zoloft, an anti-depressant.  (Ghoston Depo., pp. 27, 41.)

Oldham's warning that he "be 'locked out immediately' due to her opinion that he was a direct threat to safety of himself and others," or to Dr. Dickens's warning that "'another Lockheed Martin' had been prevented by getting . . . Ghoston off the line and . . . that [he should] not be allowed to return to work no matter whether [he] could be placed under a different supervisor or not."  (Complaint, ¶¶ 23-24).

According to Ghoston's EEOC charge, his complaint and his deposition, one thing stood in the way of him returning to work at Nissan:  his psychiatrist's restriction against returning to work under the same supervisor.  Ghoston (Brief, p. 3) concedes that "Dr. Price . . . believed he could return to work *if he were under a different supervisor* [emphasis added]."  Ghoston goes on to assert (id.) that it was because of "this information" from Dr. Price that he was "not allowed to return to work and Nissan administratively terminated [him] on April 6, 2005, when he had reached his maximum time under the disability leave policy."

That Drs. Oldham and Dickens may have felt more strongly than Dr. Price about Ghoston's restrictions is immaterial.  If Ghoston, as Dr. Price opined, could return to Nissan but only if under a different supervisor, Nissan had no duty to accommodate regardless of whether Ghoston was a "qualified individual with a disability."  If, on the other hand, returning Ghoston to Nissan would, as Drs. Oldham and Dickens opined, cause "another Lockheed Martin," the "direct threat" provision of the ADA would relieve Nissan of any liability as a matter of law. Title 42 U.S.C. §12113(b).

**Nissan Terminated His Employment For Legitimate Non-Discriminatory Reasons**

Nissan terminated Ghoston's employment for legitimate, non-discriminatory business reasons which are apparent from the face of his complaint. Ghoston alleges (Complaint, ¶28) he was "administratively terminated. . . on April 6, 2005, when he had reached his maximum time under the disability leave policy."

Exhaustion of leave time is a legitimate non-discriminatory reason for termination. *See, e.g., Henson v. Bell Helicopter Textron, Inc.*, 128 Fed. Appx. 387 (5th Cir. 2005) (unpublished opinion). Regular job attendance is an essential function of most jobs. *Hypes o/b/o Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) *("[R]easonable accommodation does not require [an employer] to wait indefinitely for [the employee's] medical conditions to be corrected. . . ." Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 759-60 (5th Cir. 1996) (quoting Myers v. Hose, 50 F.3d 378, 383 [4th Cir. 1995]; emphasis in original).

The ADA as a matter of law did not require Nissan to create a position for Ghoston, and as a matter of law it did not require Nissan to retain Ghoston on its payroll and hire someone to perform the essential functions of his job for him. *Chevron USA, Inc. v. Achazabal*, 536 U.S. 73, 86, n.5, 122 S.Ct. 2045, 2053, 153 L. Ed. 2d 82 (2002); *Moreno,* 2004 WL 34860 at p. 4; *Chiari v. City of League City,* 920 F.2d 311, 318 (5th Cir. 1991). According to the complaint, medical professionals judged Ghoston ineligible to perform his essential job functions because he was ineligible to return under the same supervisor.

While it should be enough that Nissan clearly had no duty to return Ghoston under a different supervisor, it bears noting that health professionals warned Nissan that to return

Ghoston under the same supervisor would have directly threatened workplace safety. Complaint, ¶¶20, 23, 27.  The ADA relieves employers of any obligation to accommodate even a true ADA "disability" in even a truly "qualified individual" when to do so would create a direct threat to workplace safety.  *Chevron USA, Inc., id.*  Here, according to Ghoston's own complaint, healthcare professionals warned Nissan that to return Ghoston to work under the same supervisor would create a direct threat of workplace violence.  *Cf.  Tanks v. Lockheed Martin Corp.*, 417 F.3d 456 (5th Cir. 2005) (action against employer arising out of work-place shooting in Mississippi).

## Ghoston Cannot Produce Evidence Sufficient To Create A Jury Question On His Intentional Infliction Of Emotional Distress Claim

According to Ghoston's complaint, he had no definite term of employment.  He was, therefore, an at-will employee subject to discharge without cause.  *See, e.g., Kelly v. Mississippi Valley Gas Co.,* 397 So.2d 874, 876-77 (Miss. 1981).  Ghoston alleges no recognized public policy exception to the at-will rule.  He does not assert wrongful discharge.  *See Paracelsus Healthcare Corp. v. Williard,* 754 So.2d 437, 442-43 (Miss. 1999) (recognizing narrow public policy exceptions, none applicable here, to at-will doctrine).

The Mississippi courts have uniformly rejected efforts to circumvent the at-will rule with "intentional infliction of emotional distress" claims.  The Fifth Circuit summarized the law on the subject in *Pipkin v. Piper Impact, Inc.,* 70 Fed. Appx. 760, 764-65 (5th Cir. 2003):

> In *Hatley v. Hilton Hotels Corp.,* this Court stated:
>
> The standard for intentional infliction of emotional distress in Mississippi is very high: the defendant's conduct must be "wanton

and willful and [such that] it would evoke outrage or revulsion." *Leaf River Forest Prods., Inc. v. Ferguson,* 662 So.2d 648, 659 (Miss. 1995). "A Mississippi federal court defined the necessary severity as acts so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Speed v. Scott,* 787 So.2d 626, 630 (Miss. 2001) (citations omitted). 308 F.3d 473, 476 (5th Cir. 2002). Pipkin bases her IIED claim on her termination, which she characterizes as "a calculated and premeditated ambush on an employee's means to earn a living." The mere fact that Pipkin was terminated cannot constitute the basis for an IIED claim. Losing a job is never pleasant, but it is far from outrageous in character, extreme in degree, and beyond all possible bounds of decency. *Pegues v. Emerson Elec. Co.,* 913 F.Supp. 976, 983-83 (N.D. Miss. 1996); *Jenkins v. Grenada,* 813 F.Supp. 443, 446-47 (N.D. Miss. 1993); *Lee v. Golden Triangle Planning & Dev. Dist., Inc.,* 797 So.2d 845, 851 (Miss. 2001) ("A claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes."). Therefore, Pipkin's argument is without merit.

The Mississippi Supreme Court has held conduct far more extreme than Nissan's alleged conduct in this case to not be sufficiently "outrageous" to support an emotional distress claim. *See, e.g., Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001) (fire chief called volunteer fireman liar and thief in heated exchanges before other firemen); *Brown v. Inter-City Fed. Bank*, 738 So. 2d 262, 264-65 (Miss. 1999) (employer disparaged employee as too old, asked her when she would retire, removed her from the main office, saying she needed man's help, and ultimately fired her); *Mississippi Valley Gas Co. v. Estate of Walker*, 725 So. 2d 139, 150 (Miss. 1998) (gas company failed properly to cap broken gas pipeline, causing fire which destroyed plaintiff's home); *Wong v. Stripling*, 700 So. 2d 296, 305-307 (Miss. 1997) (hospital review committee revoked physician's privileges, failed to consider all of his evidence or allow him access to his complete personnel file; chairman was biased against him and one committee member called him thief and liar); *People's Bank v. Cermack*, 658 So. 2d 1352, 1365-1366 (Miss. 1995), *reh. denied* (bank told its debtor he would have to reduce his operating expenses, rejected his first

proposal to do so, and accepted his second proposal which involved firing the plant manager); *Fuselier, Ott and McKee v. Moeller*, 507 So. 2d 63, 69 (Miss. 1987) (employer fired employee, ordered him to leave immediately and not return, and changed locks); *Morrison v. Means*, 680 So. 2d 803, 806 (Miss. 1996) (seller failed to give buyer full refund as allegedly promised); *Collums v. Union Planters Bank*, 832 So. 2d 572 (Miss. 2002) (borrower committed suicide after bank closed borrower's business account despite bank employee telling borrower account would remain open).  The facts Ghoston alleges, even if taken as true, fall short of what is necessary to create a genuine issue for intentional infliction of emotional distress.

## Conclusion

For the reasons stated above, the Court finds there is no genuine issue of material fact and holds Nissan is entitled to judgment as a matter of law.  The Court therefore hereby dismisses Ghoston's complaint with prejudice and directs entry of final judgment for Nissan, with costs taxed to Ghoston.

SO ORDERED, this the 30th day of March, 2008.

s/ HENRY T. WINGATE

_____

CHIEF UNITED STATES DISTRICT JUDGE

Civil Action No. 3:05-cv-766 HTW-LRA
Order Granting Summary Judgment